IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-00396-RN

| | |
|---|---|
| **Matthew Hall,** | |
| Plaintiff, | |
| v. | **Memorandum & Order** |
| **Frank J. Bisignano,** Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Matthew Hall challenges an Administrative Law Judge's decision to deny his application for social security income. Hall claims that the ALJ made two errors in reaching that decision. First, the ALJ erred in evaluating the medical opinion evidence. And second, she misconfigured his residual functional capacity (RFC). Both Hall and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 15, 21.

After reviewing the parties' arguments, the court has determined that the ALJ erred in her determination. The ALJ failed to evaluate medical statements from Hall's treating provider. The opinions, coupled with additional evidence submitted after the ALJ's decision, bolster Hall's allegations about his symptoms. And this issue may effect the residual functional capacity assessment. So the court grants Hall's request for relief, denies Bisignano's request for relief, and remands the matter to the Commissioner for further consideration.[2]

---

[1] The court substitutes Frank J. Bisignano for former defendant. *See* Fed. R. Civ. P 25(d).

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 13.

## I.    Background

### A.    Factual

In May 2019, before his alleged disability onset date, Hall injured his lower back. Tr. at 437. He received treatment, including a steroid injection, which improved his symptoms. *Id.* A July 2019 MRI showed minimal central and non-compressive disc displacement at L5-S1. Tr. at 16.

Eight months later, Hall's symptoms returned, leaving him unable to work as a professional golf caddy on the PGA tour. Tr. at 437. Dr. Peter Gemelli at the Independence Back Institute evaluated Hall's back and leg pain. *Id.* He assessed lumbar degenerative disc disease and lumbar sacroiliitis, for which he administered a steroid injection. Tr. at 440. He reported improvement of 50–80%. Tr. at 16. Hall then underwent physical therapy, which improved his symptoms and allowed him to return to work. Tr. at 281, 602.

While working a side job making deliveries, Hall experienced acute back pain in December 2020. Tr. at 605. He returned to Axis Physical Therapy later that month. Tr. at 605–06. Hall rated his pain between two and three out of ten in intensity. Tr. at 16. The next month, he was unable to get out of bed for four days because of the severity of his symptoms. Tr. at 607. His mother drove him to a PT appointment so he could recline in the car. *Id.*

He returned to Dr. Gemelli in January 2021 for his back and leg pain. Tr. at 433–36. Hall wanted to explore therapy with platelet-rich plasma or stem cells, but Dr. Gemelli advised him to continue with PT. Tr. at 436.

So Hall went through PT at Core Physical Therapy Tr. at 592–93. Records reflect that pain limited him from sitting or standing for more than 15 minutes. Tr. at 592. His gait was unremarkable. Tr. at 17. By July 2021, Hall had increased his strength and could perform exercises

without pain. Tr. at 17. But a short time later he had a setback, and providers noted his worsening back pain left him unable to sit for any duration, leaving Hall to avoid walking, sitting, and driving. Tr. at 635. Treatment records also reflect weakness in his lower extremities. Tr. at 636. Hall continued PT through the next month, when he experienced a flare that confined him to his home. Tr. at 625–26.

Hall saw Jessica Lancaster, PA-C, at Wilmington Health Pain and Regenerative Medicine to explore treatment options. Tr. at 764–68. She observed that he appeared uncomfortable moving from sitting to standing. Tr. at 765. Lancaster referred Hall to the Center for Pain Management, where he saw Dr. Sunil Arora later that month. Tr. at 822–24. He reported extreme pain when seated for more than five minutes. Tr. at 822. Prior studies showed some disc displacement at L5-S1. Tr. at 824. Hall walked with a normal gait and displayed a normal spinal range of motion with no tenderness and full strength in his extremities. Tr. at 17. Dr. Arora believed Hall's pain was discogenic and recommended a back brace, injections, and PT. Tr. at 822. He again experienced a flare later that month that confined him to his home for a week. Tr. at 625.

A September 2021 MRI showed mild facet hypertrophy at L5-S1. Tr. at 17, 749. Hall received a steroid injection. Tr. at 820. Providers noted an improvement in his pain and functioning. Tr. at 17. Two months later, he returned to Dr. Arora for extracorporeal magnetotransduction therapy treatments. Tr. at 888–92.

Three months later, Hall saw Dr. Jeremy Hoff at EmergeOrtho for pain management treatment. Tr. at 1018–21. He had an antalgic gait, left glute atrophy, muscle spasms, and could not sit for extended periods without pain, but rated his pain as one out of ten in intensity. Tr. at 17, 1019–20. Dr. Hoff believed that Hall suffered from sacroiliac joint inflammation, noting several SI joint dysfunction signs. Tr. at 1021. He administered four trigger point injections over the next

several months and referred Hall to PT. Tr. at 1003–15, 1049. Before his injections, Hall rated his pain between two and four out of ten in intensity. Tr. at 17

At a May 2022 follow-up visit with Dr. Hoff, Hall was somewhat improved but remained non-functional in many ways. Tr. at 998. His pain was five out of ten in intensity. Tr. at 17. Dr. Hoff noted an antalgic gait, and that Hall laid on his left side since standing caused him pain. Tr. at 999. He had some tenderness and reduced range of motion in his spine. Tr. at 17.

Hall visited Core PT, where records show he continued to experience back pain and could not drive for more than 10 minutes. Tr. at 1039. Hall again had an antalgic gait one month later and experienced significant pain with sitting and standing. Tr. at 1155. Hall was excused from jury duty due to his inability to sit or stand for more than 20 minutes. *Id.*

Hall received an injection at an appointment with Dr. Hoff in September 2022. Tr. at 1271. Hall denied any improvement with injections. Tr. at 17. Dr. Hoff questioned whether Hall's pain stemmed from another source, such as a labral tear in his hip. *Id.* After another injection two months later, Hall underwent updating imaging studies which showed some sclerotic changes in the right SI joint, L5-S1 facet arthropathy, and straightening of the normal lumbar lordotic curvature. Tr. at 1263. He received another trigger point injection the next month. Tr. at 1260–61. And he underwent a series of back injections in early 2023. Tr. at 1234, 1238, 1242, 1246, 1250.

Hall saw Dr. Hoff in June 2023 reporting 30% improvement in his back pain, which he rated as six out of ten. Tr. at 18, 1171–74. But activity increased his pain, and he had relief only by being in a pool. Tr. at 1171. In evaluating Hall from Ehlers-Danos syndrome, Dr. Hoff remarked that he scored 8 out of 9 points for hypermobility. Tr. at 1171, 1175–76. Dr. Hoff noted that the pathophysiology of hypermobility included loss of strength and nagging injuries. Tr. at 1171. And

4

he found that Hall still had difficulty sitting for prolonged periods and performing functional activities. *Id.*

Two months later, Hall saw Dr. Matthew Hannibal, an orthopedic surgeon, for an opinion on SI fusion surgery. Tr. at 1301–04. Dr. Hannibal noted Hall's Ehlers-Danos syndrome and having experienced symptoms over the past two years. Tr. at 1302–03. He could not drive and appeared uncomfortable in the exam room, frequently changing positions. Tr. at 1303. His pain was four out of ten in intensity. Tr. at 18. An examination showed full strength, but pain limited his lumbar spine range of motion. *Id.* Dr. Hannibal determined that Hall was a surgical candidate after he had two sequential SI joint injections with documentation of reasonably positive results. Tr. at 1303.

Dr. Hoff subsequently administered SI joint injections in September and October. Tr. at 93, 1352. They temporarily reduced Hall's pain by 80%. Tr. at 109, 1352.[3]

State agency physicians found that Hall could perform medium work with restrictions on postural movements and an option to alternate positions. Tr. at 19.

Hall testified that he spends 75% of the day lying down. Tr. at 133. But he cannot lie flat on his back for more than 10 minutes. Tr. at 134. And Hall cannot sit for more than 20 minutes. Tr. at 133. Although he takes opioid medication, it does not always help his symptoms. Tr. at 16.

**B.      Procedural**

In November 2021, Hall applied for disability benefits alleging a disability that began eleven months earlier. After the Social Security Administration denied his claim at the initial level and upon reconsideration, Hall appeared for a hearing before an ALJ to determine whether he was

---

[3] The second injection occurred after his hearing. Tr. at 93, 1352.

entitled to benefits. The ALJ determined Hall had no right to benefits because he was not disabled. Tr. at 11–22.

The ALJ found that Hall lived with severe impairments of facet arthritis of the lumbar region and sacroiliitis. Tr. at 13. The ALJ also found that Hall's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 14.

Next, the ALJ determined that Hall had the residual functional capacity (RFC) to perform light work with other limitations. Tr. at 15. He can stand or walk for four hours in an eight-hour workday, representing the ability to stand or walk for 30 minutes at one time and then needing to sit down for 30 minutes before standing or walking again. *Id.* If sitting, Hall must be able to alternate positions for 5–10 minutes after every one hour of sitting. *Id.*

Hall can occasionally push, pull, and operate foot controls with the lower left extremity. *Id.* He can occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* Hall can occasionally work at unprotected heights and around moving mechanical parts. *Id.* And he can occasionally operate a motor vehicle, within the sitting limitation assigned.

Then the ALJ concluded that Hall could not perform his past relevant work as a caddie or the composite job of outside deliverer and parcel post clerk. Tr. at 20. But considering his age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Hall could perform. Tr. at 20–21. These include marker, non-postal mail clerk, and officer helper. *Id.* These findings led the ALJ to conclude that Hall was not disabled. Tr. at 21–22.

After the Appeals Council declined review, Hall commenced this action in March 2025. D.E. 1. Both parties seek a decision in their favor. D.E. 15, 21.

## II.    Analysis

Hall claims that the ALJ erred in assessing the opinions of his treating pain management provider, Dr. Hoff. And the Appeals Council compounded the error by failing to consider additional statements by Dr. Hoff. These opinions, Hall asserts, support his statements about the limitations he experiences in sitting, standing, walking, and performing postural movements. The Commissioner maintains that Dr. Hoff's statements were inconsequential because they opined on the ultimate issue of disability or were unrelated to the period at issue.

The undersigned finds that the ALJ's failure to consider the limitations assessed in the opinions supports remand. The post-hearing evidence from Dr. Hoff relates to Hall's condition during the relevant period. And there is a reasonable probability that it could change the outcome of the disability determination. So it merits consideration.

Building on his first contention, Hall maintains that the ALJ misconfigured his residual functional capacity (RFC) by failing to account for the limitations Dr. Hoff found. Because there is merit to Hall's argument that the ALJ improperly assessed the medical opinion evidence, the error could impair the RFC determination. So this issue, too, forms a basis for remand.

### A.    Standard for Review of the Commissioner's Final Decision

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's

decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

**B.      Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id.*

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id.*

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is unwarranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work

schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id*.

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Opinion Evidence

Hall first alleges that the ALJ erred in considering the medical opinion from Dr. Hoff, his treating pain management specialist. He maintains that Dr. Hoff's assessments track Hall's statements about the limitations he experiences. The Commissioner contends Dr. Hoff's opinions address the ultimate issue of disability, a matter reserved to the Commissioner. And his findings after the disability determination do not relate to the period at issue before the ALJ. The court is unpersuaded by the Commissioner's contentions and finds merit to Hall's argument.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .

9

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1520(a)(2), 416.913(a)(2).

The Regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors:

(1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion."

*Id*. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

10

Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain their consideration of the other factors but need only do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *Id.*

The Regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). But when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Hall contends that Dr. Hoff's opinions support his statements that he could not maintain positions and must lie down throughout the day. But the ALJ did not analyze Dr. Hoff's 2022 and 2023 findings, and the Appeals Council offered no assessment of his 2024 opinions. Hall maintains that these errors form a basis for remand to give additional consideration to these medical opinions.

### 1. Pre-Hearing Opinions

Dr. Hoff treated Hall since 2022. In July of that year, he noted Hall's "significant difficulty with sitting or standing" and remarked that he could not sit or stand from more than 20 minutes at a time without severe pain. Tr. at 1154–55. The next year, Dr. Hoff concluded that Hall could not sit for long periods because of his sacroiliac joint pain. Tr. at 1171.

The ALJ neither noted these findings nor assessed their persuasive value. An ALJ's failure to discuss an opinion offered by a treating physician is inconsistent with the Regulations. 20 C.F.R.

§§ 404.1520c(a), (b) (stating that the SSA "will consider those medical opinions" and "will articulate in our determination or decision how persuasive we find all of the medical opinions[.]"). Yet the ALJ did not discuss Dr. Hoff's opinions. While it reviewed some of Dr. Hoff's treatment records, the decision did not indicate that the ALJ considered the limitations he assessed. And the ALJ offered no evaluation of how persuasive she found his opinions. By omitting any analysis of Dr. Hoff's findings, the ALJ failed to properly comply with her obligations under the Regulations. So this issue warrants remand for further consideration of these opinions from Dr. Hoff.[4, 5]

## 2. Opinions Submitted After Decision

There is also evidence from Dr. Hoff after the ALJ's February 2024 decision. Hall submitted these records to the Appeals Council.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *Wilkins* v. *Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 95 (4th Cir. 1991). The claimant must also show good cause for not timely submitting the evidence to the ALJ. *Id.* §§ 404.970(b), 416.1470(b); *Hawks* v. *Berryhill*, No. 1:17-CV-1021, 2018 WL 6728037, at *4 (M.D.N.C. Dec. 21, 2018).

---

[4] What's more, Dr. Hoff's statements contradict the ALJ's conclusion that there was no evidence that Hall could not sit for one hour or stand or walk for 30 minutes. Tr. at 18. This bolsters their materiality to the disability decision and the grounds for remand.

[5] The ALJ also remarked that Hall had a history of Ehlers-Danlos (E-D) syndrome, but no documented providers diagnosed it and "no examination findings of laxity in the joints, laboratory[] or radiologic testing, or other objective evidence" indicated it was an active diagnosis. Tr. at 14. Yet in July 2023, Dr. Hoff noted that Hall scored 8/9 points for hypermobility. Tr. at 1171. Dr. Hoff's March 2024 treatment records include E-D as a current diagnosis. Tr. at 61. And his opinion at that time noted two years of treatment for "Ehlers-Danlos syndrome/hypermobility" among other conditions. Tr. at 95.

12

"Evidence is new if it is not duplicative or cumulative, and it is material if there is a 'reasonable possibility that the new evidence would have changed the outcome of the case.'" *Stanley* v. *Berryhill*, No. 7:17-CV-207-FL, 2018 WL 6730552, at *7 (E.D.N.C. Nov. 13, 2018) (quoting *Wilkins*, 953 F.2d at 96), *adopted by* 2018 WL 6729787 (E.D.N.C. Dec. 21, 2018). New and material evidence "need not have existed during [the relevant] period, but rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time." *Outlaw* v. *Colvin*, No. 5:11-CV-647-FL, 2013 WL 1309372, at *2 (E.D.N.C. Mar. 28, 2013) (citing *Wooldridge* v. *Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). It is the claimant's burden to demonstrate that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision, and (3) relates to his medical condition as it existed at the time of the hearing. *Alexander* v. *Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668343, at *5 (E.D.N.C. July 19, 2010), *adopted by* 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted).

Included in the additional evidence provided to the Appeals Council was a January 2024 opinion where Dr. Hoff remarked that Hall had to frequently change positions and often lie down because of the chronic pain caused by his sacroiliac joint dysfunction. Tr. at 57. And Hall's pain made it difficult for him to concentrate and be productive. *Id.* Two months later, he stated that he had treated Hall for over two years for chronic pain from sacroiliac joint dysfunction and Ehlers-Danlos syndrome. Tr. at 95. And Dr. Hoff reiterated his findings that Hall's conditions and symptoms made him unable to maintain positions or postures for long periods and required him to frequently lie down. Tr. at 96. So he would need additional and unscheduled breaks to rest or recline. Tr. at 95.

13

The Appeals Council determined that there was no probability that the January 2024 statement would alter the disability finding. Tr. at 2. And it concluded that the March 2024 assessment did not relate to the relevant period. *Id.*

While there was no requirement that the Appeals Council explain its reasoning, the court still must consider whether Dr. Hoff's 2024 opinions were new, material, and relate to the period on or before the date of the ALJ's decision and whether there is a reasonable probability that the additional evidence would change the outcome of the decision. *Wilkins*, 953 F.2d at 95; *see also Coleman* v. *Berryhill*, No. 6:17-CV-2613, 2019 WL 850902, at *3 (D.S.C. Feb. 22, 2019). If so, the Appeals Council erred in failing to consider the opinions, and the court must remand that matter.

The undersigned finds that the record undermines the Appeals Council's conclusions. So these later opinions from Dr. Hoff warrant evaluation, which establishes a basis for remand.

First, the evidence is new. It arose after the hearing and was not part of the record before the ALJ. And both the January and March statements appear to identify limitations that providers had not assessed in previous records or that the ALJ had not evaluated.

Second, the 2024 statements by Dr. Hoff are arguably material. They describe the limitations Hall experiences: difficulty with concentration and productivity, a need to frequently lie down, the necessity to frequently change positions because of an inability to maintain positions or postures for long periods, and a likelihood of more than four absences from work per month. Tr. at 94–96. If endorsed, the findings in these opinions could alter the RFC determination and later steps of the sequential evaluation including the identification of other work Hall could perform.

14

Third, the opinions relate to Hall's condition during the relevant period. The January 2024 opinion pre-dates the February 2024 decision by the ALJ. So any argument that it falls outside the relevant period lacks merit.

Dr. Hoff issued his March 2024 opinion nine days after the ALJ's decision. That evidence post-dates an ALJ's decision does automatically render it irrelevant. *Randall* v. *Saul*, No. 2:19-CV-7-FL, 2020 WL 1046766, at *5 (E.D.N.C. Feb. 4, 2020), *adopted by* 2020 WL 1042456 (E.D.N.C. Mar. 3, 2020). "Evidence may relate back to the period on or before the ALJ's decision even if it postdates the decision." *Shuman* v. *Berryhill*, No. 3:16-CV-62, 2017 WL 3476972, at *3 (N.D.W. Va. Aug. 14, 2017) (citation omitted). Dr. Hoff's March 2024 statement, made within days of the ALJ disability determination, describes Hall's conditions and treatment since January 20022, which were at issue before the ALJ. Tr. at 95–96. And it identifies the functional limitations stemming from Hall's impairments and symptoms for which Dr. Hoff had provided treatment for more than two years. *Id.* The undersigned thus finds that Dr. Hoff's 2024 opinions relate to Hall's condition during the relevant period.

Fourth, contrary to the Appeals Council's conclusion, there is a reasonable probability that the 2024 opinions could change the outcome of the disability determination. These post-hearing submissions track Dr. Hoff's earlier findings. Given the ALJ's error in failing to evaluate Dr. Hoff's statements contained in the record before her, the fact that later opinions support Dr. Hoff's prior statements, his opinions could alter the disability evaluation if deemed persuasive.

Dr. Hoff's statements reflect Hall's continuing conditions, symptoms, and treatment. They identify restrictions with his functional abilities. And the opinions corroborate Hall's statements about the limitations he experiences. So the 2024 evidence from Dr. Hoff is new, material, and relates back to the relevant period. And there is a reasonable probability it would change the

15

outcome of the ALJ's decision. *See Randall*, 2020 WL 1046766, at \*5. So the court remands the matter to consider this evidence.

### 3. Ultimate Issue of Disability

The Commissioner contends that Dr. Hoff opined on the ultimate issue of disability, a matter reserved to the Commissioner. According to Bisignano, this alters Dr. Hoff's statements from being medical opinions to administrative findings, entitling them no authority or sway. But the undersigned finds that the ALJ may not disregard a medical opinion solely because it includes a statement by the provider about a claimant's ability to work.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. "[A] medical opinion is a statement from a medical source about what you can still do despite your impairment(s)[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion may include physical limitations in the ability to sit, stand, or walk, or mental restriction, such as an impaired ability to concentrate or maintain pace. *Id.* While an ALJ must explain the persuasive value of medical opinions, there is no articulation requirement for "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). An ALJ's failure to consider a medical opinion and articulate its persuasiveness may violate her duties under the Regulations. *See Richard P.* v. *Saul*, 2021 WL 2152566, at \*7 (W.D. Va. May 27, 2021) (holding that the ALJ erred by characterizing an entire medical opinion as "a statement on an issue reserved to the Commissioner").

Opinions about whether a claimant is disabled are administrative findings reserved to the Commissioner and deserve no special significance. *See* 20 C.F.R. § 404.1520c(d). Dr. Hoff's

statements include remarks that Hall "likely would not be able to maintain gainful employment in any type of manual labor job" and would experience "difficulties with sedentary work[.]" Tr. at 1171. Dr. Hoff also concluded that Hall would have difficulty performing sedentary work on a regular and continuing basis. Tr. at 94.

But Dr. Hoff's assessments contain other findings addressing Hall's functional abilities. He observed that Hall could not sit form more than 20 minutes and was unable to sit for long periods of time. Tr. at 1155, 1171. In January 2024, Dr. Hoff found that Hall must frequently change positions, often lie down, and had trouble concentrating and being productive. Tr. at 57. And two months later, he concluded that Hall would be absent from work more than four times a month, could not maintain comfortable positions or postures, and must frequently lie down. Tr. at 95–96. These portions of the treating provider's opinions constitute medical opinions that the ALJ had an obligation to analyze and explain their persuasive value. *See Teel* v. *Kijakazi*, No. 4:20-CV-119-D, 2021 WL 5234973, at *9 (E.D.N.C. Oct. 18, 2021) (finding that provider's statement about the claimant's exertional abilities fell within the Regulations definition of medical opinion).

Setting aside those parts of Dr. Hoff's opinions on the ultimate issue of disability, which is reserved to the Commissioner, the ALJ's failure to consider the other findings made departs from the requirements under the Regulations. Thus the fact that the opinions addressed the ultimate issue of disability does not invalidate the medical findings they reached or relieve the ALJ of her obligation to analyze them. So Bisignano's contentions provide no basis to conclude remand is unwarranted. The court thus finds no merit to the Commissioner's position on this issue.

### 4. ALJ's Decision Lack Substantial Evidentiary Support

The Commissioner argues that despite the additional submissions, substantial evidence supports the ALJ's decision. *See Meyer* v. *Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (noting that

17

courts should affirm a denial of benefits where, even with new evidence presented to the Appeals Council, substantial evidence supports the ALJ's findings and that reversal is required only if, on consideration of the record as a whole, the court "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits[.]"). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively,* 739 F.2d at 989. If the record contains substantial evidence to support the decision—if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury—a court must uphold the decision, even if the court disagrees with it. *Blalock* v. *Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Commissioner maintains that the findings of the state agency physicians provide substantial evidence for the RFC. Br. at 12, D.E. 21; *see Smith* v. *Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986) (observing that the opinions of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner). The state agency physicians determined that Hall could perform a reduced range of medium work with frequent postural activities. Tr. at 19. The ALJ found these evaluations partially persuasive. *Id.*

The ALJ noted the incongruity between the mild imaging findings, generally normal examination results, and the intermittent nature of Hall's symptoms with his claimed limitations supported the state agency physicians' assessments. Tr. at 19. But the ALJ identified shortcomings in these non-examiners' opinions. *Id.* She explained that evidence at the hearing, including Hall's low back and joint pain and required treatment, conflicted with a conclusion that he could perform medium work with frequent postural movements. *Id.* Instead, the evidence showed he was more limited and supported an RFC for a reduced range of light work with occasional postural movements. *Id.*

18

Because the state agency physicians lacked later evidence that was material to the sequential evaluation analysis, they had an incomplete record to assess Hall's RFC. There is no requirement that non-examining consultants have the entire record before an ALJ may rely on their assessments. *See Tanner* v. *Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015); *Thacker* v. *Astrue*, No. 3:11-CV-246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination."); *Bracey* v. *Astrue*, No. 5:07-CV-265-FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (finding no error in ALJ's reliance on state agency consultants' opinions where later records showed similar findings as those the consultants reviewed and the ALJ considered the additional evidence, which showed no marked changes in claimant's health). Still, an ALJ must still consider entire evidentiary record for a court to find that substantial evidence supports the disability determination.

Here, the ALJ remarked that other evidence challenged the state agency physicians' assessments. Tr. at 19. But regardless of whether the state agency physicians' partially persuasive assessments lend support to the RFC determination, the ALJ's failure to evaluate Dr. Hoff's opinions casts doubt on the reliability of the RFC. And the state agency physicians' conclusions fail to rectify the ALJ's lack of analysis of the treating provider's opinions. Lacking an indication that the entire evidentiary record was considered in making the disability determination forecloses a substantial evidence finding.

What's more, even if the partially persuasive state medical providers' findings lend support to the RFC determination, a substantial evidence finding cannot be made where the ALJ has failed to reconcile conflicts in the evidence. *See Mascio* v. *Colvin,* 780 F.3d 632, 637–40 (4th Cir. 2015)

(observing that an ALJ is tasked with resolving conflicts in the evidence and providing a reasonable explanation).

The court thus rejects the Commissioner's argument as lacking merit.

### D.    Residual Functional Capacity

Hall's second argument builds on the first issue—the ALJ misconfigured the RFC because it omitted the limitations that Dr. Hoff found. The Commissioner asserts that the state agency physicians' assessments, which the ALJ found partially persuasive, provide substantial evidence to support her determination. Given the flaws in evaluating the medical opinion evidence, the court cannot conclude that the ALJ properly determined Hall's RFC. So this issue, too, forms a basis for remand.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also*

*Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio,* 780 F.3d at 636 (quoting SSR 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate

21

meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See, e.g.*, *Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010))).

Here, the ALJ found that Hall could perform light work with other limitations. Tr. at 15. But Hall contends that the RFC determination is unsound where the ALJ failed to analyze and explain how she evaluated Dr. Hoff's opinions. The undersigned agrees.

As discussed, the Commissioner's contention that the state agency physicians' assessments support the RFC fails to overcome the ALJ's error of omitting a discussion of Dr. Hoff's findings. The ALJ's mistake in overlooking Dr. Hoff's opinions could affect the RFC determination and the subsequent steps of the sequential evaluation. Without discussing Dr. Hoff's opinions, it is impossible to confirm their persuasiveness or how they inform the RFC determination. *See Lewis*, 2022 WL 4456255, at *5 (W.D.N.C. Sept. 23, 2022). So the undersigned cannot conclude that the RFC determination, constructed on a flawed analysis, is sound. And it frustrates the court's ability to conduct a meaningful review. *See Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Hall presents a meritorious argument. So the undersigned recommends that the court remand the matter to the Commissioner for further consideration.

## III. Conclusion

For all these reasons, the court grants Hall's request for relief (D.E. 15), denies Bisignano's request for relief (D.E. 21), and remands the matter to the Commissioner for further consideration.

22

This action is dismissed. The Clerk shall close this case.

Dated:  February 13, 2026

_Robert T. Numbers II_
Robert T. Numbers, II
United States Magistrate Judge